**In re WELDPOWER INDUSTRIES, INC., Debtor.**

**WELDPOWER INDUSTRIES, INC., Plaintiff,**

v.

**Forest KIMBALL, Defendant.**

Bankruptcy No. 82–0025.
Adv. No. 83–00225.

United States Bankruptcy Court,
D. New Hampshire.

June 12, 1984.

**614**

John R. Michels, Londonderry, N.H., trustee for debtor.

Jay Printzlau, Londonderry, N.H., for defendant.

Bruce Larson, Londonderry, N.H., for debtor.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge.

This case was tried before the court upon a "Complaint for Turnover of Funds" filed herein by the Chapter 7 trustee seeking a judgment against the defendant, Forest Kimball, in the amount of $6,000.00 plus interest at 9% from December 17, 1980 based upon a promissory note payable to Weldpower Industries, Inc. in that amount on that date executed by Kimball.

The defendant admits that he has never made any payment on the promissory note but contends that the transaction involved an option to purchase corporate stock of Weldpower which he ultimately chose not to exercise.

There is no written option agreement. The evidence instead indicates that the defendant was issued corporate stock in question in December of 1980, and that as of the date of filing of the bankruptcy proceedings on January 18, 1982 the corporate stock was still in the possession of Kimball and the promissory note still was in the possession of Weldpower. At all material times the corporate records indicated the promissory note as an outstanding debt due from Kimball to the corporation.

The defendant testified to several oral conversations with the president of Weldpower as to an understanding that Kimball could turn back their stock and the note would be forgiven. The evidence does not establish that a clear and definite understanding in this regard was expressed between the parties *prior to* the filing of the bankruptcy petition for Weldpower. In any event, there is a serious question as to whether such an oral understanding would be enforceable under the provisions of *RSA 382–A:8–319.*

Assuming *arguendo* from the further affidavits received in evidence that there was an oral agreement for repurchase of the stock prior to bankruptcy, and that such would be enforceable even in the absence of an authorizing resolution by the board of directors of Weldpower, the evidence simply does not establish a true "option" agreement. This is true notwithstanding the use of "option" language by the parties.

The uncontroverted fact is that the corporate stock in question *was* issued over a year prior to bankruptcy, and remained in the hands of the defendant up to and including the date of bankruptcy. If the corporation had proved to be profitable during that period the defendant would have had the right to any returns upon the stock investment that he held. Accordingly, now that the corporate venture has failed, the defendant cannot be heard to contend that his stock ownership was a mere "option" from which he can walk away to the detriment of the creditors of the failed enterprise.

The defendant's alternative contention that his promissory note obligation was rendered unenforceable by a subsequent issuance of additional stock to others without offering him pre-emptive rights suffers from the same vice of treating as an "op-

"tion" what was in fact a completed sale of stock. He got exactly what he bargained for by the note, i.e., issuance of the corporate stock to preserve his *then-existing* pre-emptive rights. Any *subsequent* violations concerning additional stock transactions may have given him a cause of action but do not destroy the enforceability of his note obligation.

The foregoing shall constitute findings of fact and conclusions of law in accordance with the Rule.

The parties shall settle upon a form of judgment to be entered in accordance with this Opinion within 10 days of date.